O

# United States District Court
# Central District of California

| | |
|---|---|
| GURWINDER SINGH,<br><br>           Plaintiff,<br><br>     v.<br><br>MARK BOWEN et al.,<br><br>           Defendants. | Case № 5:25-cv-03322-ODW (AGRx)<br><br>**ORDER GRANTING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [2]** |

## I.     INTRODUCTION

Petitioner Gurwinder Singh applies *ex parte* for a temporary restraining order requiring his immediate release from custody or an individualized bond hearing before an immigration judge ("IJ"). (Ex Parte Appl. ("TRO") 1–3, Dkt. No. 2.). Petitioner also requests that the Court enjoin Respondents from transferring Petitioner outside of this District pending the Court's final adjudication of this matter. (*Id.* at 3.) Respondents filed an untimely opposition brief. (Opp'n, Dkt. No. 8.)[1] For the reasons discussed below, the Court **GRANTS** Petitioner's TRO.

---

[1] On December 9, 2025, Petitioner served Respondents with the TRO. (Proof Service TRO, Dkt. No. 4.) This Court's Rules provide that opposing papers to a noticed ex parte application "must be filed no later than 24 hours following service." *See* Hon. Otis D. Wright, II Standing Order § VII.C., https://www.cacd.uscourts.gov/honorable-otis-d-wright-ii. Accordingly, the Court declines to consider Respondents' untimely opposition brief. *See* C.D. Cal. L.R. 7-12. Furthermore, nothing in Respondents' untimely opposition brief alters the Court's disposition of the TRO.

## II. BACKGROUND

Petitioner is a native and citizen of India. (Pet. ¶¶ 1, 15, Dkt. No. 1.) On September 10, 2024, he entered the United States without inspection. (*Id.*) DHS later released Petitioner on an Interim Notice Authorizing parole. (*Id.* ¶ 1.) Petitioner's release conditions required him to participate in Alternative to Detention ("ATD") monitoring and check in with ICE every three months. (*Id.*) After his release, Petitioner applied for asylum, obtained employment, and complied with the terms of his release. (*Id.* ¶ 3.) He has no criminal or violence history. (*Id.* ¶¶ 3, 16.)

On October 24, 2024, DHS served Petitioner with a Notice to Appear ("NTA") and placed him in removal proceedings. (*Id.* ¶¶ 2, 15.) Petitioner timely filed an Application for Asylum. (*Id.* ¶¶ 3.) Nonetheless, on November 29, 2025, ICE detained Petitioner outside his residence as he was leaving for work. (*Id.*) Petitioner is currently detained at Adelanto. (*Id.* ¶ 19.)

Petitioner is subject to an order of removal detention under 8 U.S.C. § 1226(a). (*Id.* ¶ 4.) Noncitizens detained under § 1226(a) are subject to discretionary detention and may request a bond hearing before an IJ. (*Id.*) However, pursuant to a new DHS "Interim Guidance" ("New Policy"), "noncitizens like Petitioner who entered the United States without permission or parole are subject to mandatory detention under 8 U.S.C. § 1225(b) instead of discretionary detention under [§] 1226(a)." (*Id.*) On September 5, 2025, the Board of Immigration Appeals ("BIA") issued a decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) adopting DHS's interpretation. (*Id.*) As a result, DHS considers all noncitizens who entered the United States without inspection, including Petitioner, subject to mandatory detention under § 1225(b) and ineligible for release on bond. (*Id.* ¶¶ 25, 30.) Petitioner is thus detained without the ability to obtain a bond hearing before an IJ. (*Id.* ¶¶ 28, 30.)

Based on these allegations, on December 9, 2025, Petitioner filed a Petition for Writ of Habeas Corpus on the grounds that his detention is unlawful and violates his Fifth Amendment right to due process and § 1226(a). (*Id.* ¶¶ 27–35.) That same day,

Petitioner filed this Application for a Temporary Restraining Order ("TRO"). (TRO.) Petitioner seeks an order requiring (1) Respondents to release him or provide him with a bond hearing before an IJ, and (2) enjoin Respondents from relocating him outside this District pending resolution of this case. (*Id.* at 3, 8–9.) On December 9, 2025, Petitioner served Respondents with the TRO. (Proof Service TRO.) On December 11, 2025, Respondents filed their untimely opposition brief. (Opp'n.)

### III.     LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must establish the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

Courts in the Ninth Circuit evaluate the *Winter* factors on a sliding scale approach, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the sliding scale approach, a plaintiff is entitled to a preliminary injunction if he has raised "serious questions going to the merits . . . and the balance of hardships tips sharply in [his] favor," "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

### IV. DISCUSSION

The Court briefly addresses its jurisdiction to review Petitioner's claims, before turning to the merits of the TRO.

**A. Jurisdiction**

The Court must first consider whether it has jurisdiction to grant the requested relief. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction."). Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." The Supreme Court has construed § 1252(g) to apply only to those three specified actions, stressing that the statutory aim is to prevent "attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 485 n.9 (1999). However, a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority." *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004).

Here, Petitioner raises a question of law as to whether his mandatory detention during the pendency of his removal proceedings falls under § 1226(a) or § 1225(b)(2). (TRO 3–6.) He does not challenge the Attorney General's discretionary authority to commence, adjudicate, or execute removal proceedings. (*See generally id.*) Moreover, the Court does not review or disturb Petitioner's underlying order of removal. Instead, the Court confines its analysis to the narrow legal question properly before it: whether Petitioner's detention entitles him to release or an individualized bond hearing. As the Court addresses only the legality of Petitioner's detention—not the merits, validity, or execution of his removal order—the Court has jurisdiction to review Petitioner's TRO. *Hovsepian*, 359 F.3d at 1155.

**B.  Merits of the TRO: *Winter* Factors**

Petitioner demonstrates that the *Winter* factors weigh in favor of an injunction.

*1.  Likelihood of Success on the Merits*

Petitioner contends that § 1226(a), not § 1225(b)(2), governs his detention. (TRO 3–6.)

The Court has considered this identical issue in nearly identical factual circumstances and incorporates and adopts by reference its analyses in those recent decisions. *See Garcia v. Noem*, No. 5:25-cv-02771-ODW (PDx), 2025 WL 2986672, at *2–4 (C.D. Cal. Oct. 22, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285, at *2 (C.D. Cal. Aug. 15, 2025); *Gonzalez v. Noem*, No. 5:25-cv-02054-ODW (ADSx), 2025 WL 2633187, at *2–3 (C.D. Cal. Aug. 13, 2025); *see also Saucedo v. Noem*, No. 2:25-cv-11051-ODW (RAOx) (C.D. Cal. Nov. 20, 2025) (order granting temporary restraining order); *Longoria v. Noem*, No. 5:25-cv-03098-ODW (DFMx), 2025 WL 3302780, at *3 (C.D. Cal. Nov. 25, 2025) (same). For the reasons stated in those decisions, the Court finds again that the statutory text does not support the notion that § 1225 governs where, as here, an alien is present in the United States without admission. *See Gonzalez*, 2025 WL 2633187, at *4 ("If Respondents are correct that Congress meant for § 1225 to govern all aliens present in the United States who had not been admitted, it would render the exception made under § 1226(c)(1)(E) unnecessary." (internal quotation marks omitted)). To the contrary, the plain text actually supports Petitioner's argument that § 1226(a) applies to his detention. (TRO 6); *see Arrazola-Gonzalez*, 2025 WL 2379285, at *2 ("[Section 1226] 'applies to aliens already present in the United States.'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018))).

As in prior cases presenting these circumstances, the Court finds here that Petitioner shows a likelihood of success on the merits of his claim that § 1226(a), not § 1225, governs his detention.

### 2. Likelihood of Irreparable Harm

Petitioner contends that he will suffer irreparable harm in the absence of a TRO as he will continue to be unlawfully detained without a bond hearing. (TRO 7–8.)

The harm resulting from Petitioner's continued detention is the deprivation of his right to a bond hearing and due process. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting that "[f]reedom from imprisonment . . . lies at the heart of the liberty" that the Due Process Clause protects); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). The Court finds that Petitioner's continued detention without a bond hearing causes, and will continue to cause, immediate and irreparable injury.

### 3. Balance of Equities and Public Interest

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Petitioner contends that if he "is not released or promptly provided a constitutionally adequate bond hearing, he will be forced to continue litigating his asylum claim in detention even though he is statutorily eligible for release on bond." (TRO 8.) He also argues that "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." (*Id.* (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).)

As the Court has previously expressed, "to the extent that the BIA's adopted statutory interpretation deprives Petitioner[] of [his] constitutional rights and violates federal law, 'it is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue.'" *Gonzalez*, 2025 WL 2633187, at *6 (quoting *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022)). Accordingly, the balance of equities and the public interest factors also favor injunctive relief.

## V.  CONCLUSION

For the reasons discussed above, the Court finds that all four *Winter* factors weigh in favor of a TRO.  Accordingly, the Court **GRANTS** the TRO.  (Dkt. No. 2.)  It is hereby **ORDERED** that:

- Respondents shall release Petitioner or, in the alternative, provide him with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) **within seven (7) days** of this Order;
- Respondents are enjoined from relocating Petitioners outside of the Central District of California pending final resolution of this case; and
- Respondents shall **SHOW CAUSE**, in writing only, to be received by the Court no later than **December 18, 2025**, as to why the Court should not issue a preliminary injunction in this case.  Petitioners may file a reply by **December 20, 2025**.  The Court **SETS** a hearing on the preliminary injunction on **December 23, 2025, at 9:00 a.m.**, via Zoom.

**IT IS SO ORDERED.**

December 11, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**